CLEVELAND *vs.* THE CENTRAL RAILROAD.

In a suit by a wife for the homicide of her husband, contributory negligence was urged as one ground of defence. The evidence showed that the deceased was twenty-six years of age, and was making a little over $100.00 per month. The jury found for the plaintiff $6,000.00. The presiding judge granted a new trial, and this court declined to interfere with his discretion. On a second trial, the evidence taken on the former trial was read to the jury, and they found for the plaintiff the same amount as in

the first verdict. On motion, the presiding judge granted a second new trial, on the ground that the verdict was excessive:

*Held*, that this was error. Questions of contributory negligence are matters for the jury, and after two verdicts for the same amount and based on the same facts, the judge should not have interfered with the finding, there being enough evidence to justify it, and no error of law being complained of in the rulings of the court on the trial.

Judgment reversed.

January 6, 1885.

JACKSON, Chief Justice.

[Mrs. Kate Lavier brought suit against the Central Railroad for the homicide of her husband, and the jury found in her favor $6,000.00. The court below granted a new trial, and his ruling was affirmed by the Supreme Court, on the ground that he had not. abused his discretion (71 *Ga.*, 222). Pending the case, the plaintiff re-married, and is now Mrs. Kate Cleveland. On the second trial, with the same evidence as before, the jury again found $6,000.00. A motion for new trial was again made, on the ground that the verdict was contrary to law, evidence and the charge of the court, and because the damages found were excessive. The court again granted a new trial, holding that, if the evidence made out any case at all, the verdict was excessive under the facts.

The evidence for the plaintiff was, in brief, as follows: Lavier was a lumber inspector for the firm of D. C. Bacon & Company, and as such attended to their lumber-yard at the railroad yard of the Central Railroad. On the day of the accident, he wanted some lumber "drilled," and so informed the engineer of the switch-engine plying in the yard, but the latter said he had some boxes to carry to the "New York shed," and when he came back, he would drill the lumber. There were several tracks at that point; the engine went down one of them, and Lavier and one Müller went down another in the same direction, to where some cars of lumber were standing. Lavier got upon them,

walked over them, and then sprang down between the tracks and started to Bacon & Company's office, which was something over a hundred yards away. Between these points there was a culvert and an embankment; and while it seems to have been possible to have walked from one to the other without walking on the track, it was not so good a walk, and the usual way used was on the track. Lavier got upon the track and started on, with his head down and his hands behind him. Along with him and just behind him was Müller. In the meantime, the switch-engine had gone down the track some little distance, coupled to a box-car, and run backwards up the road. It changed from the track on which it had gone down to that on which Lavier was. A signal had been given as it went down, but none was given, according to instructions, as it returned, running backwards, at the rate of eight to ten miles per hour. A witness testified that the fireman was leaning his arm against one window and the engineer against the other, and the two seemed to be talking, and that no one seemed to be on the look-out, nor did they appear to know of the injury until after it had happened. Just before the engine reached the men, another employé of Bacon & Company called out to them. Müller heard it, saw the engine and leaped from the track. Lavier tried to jump, but was too late, and was caught by the engine and killed. At the time of his death, Lavier was twenty-six years of age; his expectancy was 37.14 years; he earned from $100 to $110 per month.

The evidence for the defendant differed from that of the plaintiff in the following material points: The engineer told Lavier that he would move his lumber as soon as he could move the box-car, and went on down the track. He had to move the box-car out of the way in order to reach the river-front. As the engine came back, the bell was rung, and both the engineer and fireman were leaning out of the windows watching the track in the direction in which they were moving. The speed was not

over four to six miles per hour. They could see the track to within a few feet of the engine, and could have seen Lavier if he had been on it, but neither of them saw him. As they passed over the switch, they felt a jolt, which they attributed to it. In a second or two, the brakeman glanced towards the switch and saw Lavier under the wheels of the car. From the fact that they did not see him on the track, and that it would have been natural for the foot-board of the engine to have caught in his clothes, they thought he had attempted to get on the engine, and had fallen. He had so boarded the train before. The tracks were those of defendant, and Lavier was not obliged to walk upon them, though it was often done.

To the grant of the new trial plaintiff excepted.]